United States District Court
Southern District of Texas
**ENTERED**
April 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KAREM MAGHAREH, ET AL., § § Plaintiffs. § § VS. § § ALEX AZAR, in his official capacity as § SECRETARY, DEPARTMENT OF § HEALTH AND HUMAN SERVICES, § § Defendant. § | CIVIL ACTION NO. 4:19–CV–00238 |

## MEMORANDUM AND RECOMMENDATION

Before me are the parties' competing motions for summary judgment. *See* Dkts. 37, 38. After carefully reviewing the legal briefing, analyzing the relevant case law, and hearing oral argument, I recommend that Plaintiffs' Motion for Summary Judgment (Dkt. 37) be **GRANTED** and Defendant's Motion for Summary Judgment (Dkt. 38) be **DENIED**.

### BACKGROUND

BestCare Laboratory Services, LLC ("BestCare") is a clinical laboratory that formerly operated throughout Texas. Karim Maghareh ("Maghareh") is BestCare's founder, owner, president, and chief executive officer. Defendant Alex Azar (the "Secretary") is the Secretary of the Department of Health and Human Services (the "HHS"). BestCare and Maghareh (collectively, "Plaintiffs") ask me to overturn an August 17, 2018 decision of an HHS Administrative Law Judge ("ALJ") to exclude them from federal healthcare programs for 15 years.

Before I get ahead of myself, let me provide the context necessary to fully understand where we are now and how the parties got here. BestCare performed diagnostic laboratory testing for Medicare beneficiaries throughout Texas, most of whom were residents of nursing facilities. At all relevant times, BestCare had six business locations within the state of Texas: three laboratories and three processing centers. BestCare's primary laboratory was located in Webster, Texas, a suburb of Houston. BestCare also had smaller laboratories in San Antonio and Dallas, and processing centers without laboratory facilities in Waco, Austin, and El Paso.

In each city served by BestCare, local phlebotomists[1] drove to nursing homes to collect specimens and then returned the specimens to BestCare's local laboratory or processing center for processing. Some of the collected specimens were tested or prepared for testing in the San Antonio or Dallas laboratories, but most were brought to the airport and shipped in batches by commercial airline—as cargo, unaccompanied by a phlebotomist or other trained personnel—to Houston's William P. Hobby Airport. Upon arrival, BestCare employees or couriers would pick up the shipments of specimens and drive them to the Webster laboratory to be tested.

Medicare Part B pays clinical laboratories such as BestCare a travel allowance to cover transportation expenses and personnel expenses incurred when trained personnel travel to the location of a nursing home patient or homebound patient to collect a sample for testing. *See* 42 U.S.C. § 1395l(h)(3). HHS is charged with establishing the fee. *See id.* Between August 2009 and January 2010, BestCare billed Medicare for mileage as if

---

[1] Phlebotomists draw blood for tests, transfusions, research, or blood donations.

trained personnel had driven hundreds of miles to transport specimens all over Texas, when in fact the specimen had been shipped between cities via air cargo as described above.

The Office of the Inspector General for the HHS (the "IG") is authorized to exclude from participation in any federal health care programs (including Medicare and Medicaid) individuals and entities that knowingly present or cause the presentment of claims to Medicare that they know or should have known are false, fraudulent, or otherwise not provided as claimed. *See* 42 U.S.C. § 1320a-7(b). In 2015, the IG determined that BestCare's billings were improper and began proceedings to exclude Plaintiffs on the basis that from at least August 21, 2009, through January 26, 2010, they submitted 571 false claims to Medicare for 400 miles or more of purported technician travel, none of which were actually traveled by a technician. As a result of this determination, by letter dated August 21, 2015, the IG proposed to exclude Plaintiffs from participation in Medicare, Medicaid, and other federal health care programs based on their submission of these false claims, for a period of 15 years.

Plaintiffs timely requested a hearing before an ALJ. ALJ Scott Anderson ("ALJ Anderson") was originally designated to hear and decide the case, but the case was reassigned to ALJ Bill Thomas ("ALJ Thomas") in June 2017. On October 6, 2017, ALJ Thomas ruled on several outstanding motions and objections, including:

> [T]he IG's October 12, 2016 Motion to Treat Witnesses as Adverse; the IG's October 28, 2016 Motion for Summary Judgment; Petitioners' December 5, 2016 Motion for Summary Judgment; Petitioners' December 5, 2016 Objections to Inspector General's Exhibits; the IG's December 19, 2016 Objections to Petitioners' Proposed Exhibits and Witnesses;

> Petitioners' January 17, 2017 Request for Subpoena; and the IG's January 27, 2017 Motion for Issuance of Subpoenas; Petitioners' February 1, 2017 Emergency Unopposed Motion for Continuance to Reset Hearing; and Petitioner Karim Maghareh's unopposed September 28, 2017 motion requesting withdrawal of an attorney representing him in this case, Doug Salisbury.

Dkt. 20-3 at 266. ALJ Thomas held an evidentiary hearing in March 2018, and on August 17, 2018, ALJ Thomas issued a decision excluding Plaintiffs from federal healthcare programs for a period of 15 years. The exclusions became effective as of the date of ALJ Thomas's decision.

Plaintiffs timely appealed ALJ Thomas's decision to the HHS Departmental Appeals Board (the "Board") on September 17, 2018. On appeal, Plaintiffs challenged the substance of ALJ Thomas's decision and objected that ALJ Thomas and his predecessor, ALJ Anderson, were not properly appointed based on the Appointment Clause of the Constitution and the Supreme Court's recent decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).[2] After briefing, the Board upheld ALJ Thomas's determination that there was a legal basis for Plaintiffs' exclusions and an exclusionary period of 15 years was reasonable. The Board also declined to consider Plaintiffs' Appointment Clause arguments because they did not first raise the issue with ALJ Thomas. *See* Dkt.

---

[2] On June 21, 2018, the United States Supreme Court in *Lucia* determined that executive agency ALJs are "officers of the United States" and subject to the Appointments Clause of the United States Constitution, art. II, § 2, cl. 2. *Lucia*, 138 S. Ct. at 2055. The high court found that the Securities and Exchange Commission's ("SEC") ALJ, who conducted the claimant's hearing and issued an unfavorable decision, had been appointed by SEC staff members, not the SEC department head, and therefore was not appointed in accordance with the Appointments Clause of the Constitution. *See id.* at 2053. The Supreme Court remanded the matter to the SEC for a remedial hearing by either a different properly appointed ALJ or the Commission itself. *See id.* at 2055.

20-1 at 62–64. The Board decision constitutes the final agency action in this matter. *See* 42 C.F.R. § 1005.21(j). On January 22, 2019, Plaintiffs filed this suit seeking review of Plaintiffs' exclusions by the Secretary.[3]

Before me are two primary issues: (1) whether ALJ Thomas's exclusion decision is supported by substantial evidence; and (2) whether ALJ Thomas was unconstitutionally appointed in violation of the Appointments Clause. In this decision, I address the second issue, ALJ Thomas's appointment, along with the parties' respective arguments relating to that issue. Because my determination regarding ALJ Thomas's appointment is dispositive, I do not reach the substantial evidence issue.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quotation marks and citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quotation marks and citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary

---

[3] Although it has no bearing on this decision, the Fifth Circuit recently issued an opinion in a parallel proceeding. *See United States ex rel. Drummond v. BestCare Lab. Servs.*, L.L.C., 950 F.3d 277 (5th Cir. 2020). In that case, the Fifth Circuit affirmed a $30.5 million False Claims Act damage award in favor of the United States and against BestCare and Maghareh for defrauding Medicare by billing thousands of miles that were not actually travelled.

support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017) (quotation marks and citation omitted). Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (quotation marks and citation omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (quotation marks and citations omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted). "On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## DISCUSSION

Plaintiffs contend that ALJ Thomas was unconstitutionally appointed in violation of the Appointments Clause when he made critical rulings in their administrative case. As a result, Plaintiffs argue that *Lucia* mandates that this case be returned to the HHS for a new hearing before a different constitutionally appointed ALJ. *See* 138 S. Ct. at 2055–56. In response, the Secretary first argues that Plaintiffs waived their Appointments Clause challenge by failing to timely raise the issue before ALJ Thomas. If the Secretary

is correct, he prevails, and this case is over. However, if the Secretary is incorrect, I must turn to the Secretary's next argument: even if Plaintiffs did not waive their challenge, no Appointments Clause issue exists because ALJ Thomas was properly appointed via ratification. This second argument is tricky because even if I find that ALJ Thomas's appointment was properly ratified, I must still determine whether such ratification cured the *Lucia* problem. I engage in this analysis below.

**A.    THE APPOINTMENTS CLAUSE**

I begin with the Appointments Clause. The Appointments Clause of Article II of the Constitution provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. CONST., art. II, § 2, cl. 2. The Supreme Court has explained that the Appointments Clause guards against "one [governmental] branch[] aggrandizing its power at the expense of another branch" and "also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power." *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991). Thus, litigants are empowered to challenge the appointments of "Officers of the United States" that were not done in compliance with the Appointments Clause. Typically, Appointments Clause litigation concerns whether a particular official qualifies as an Officer of the United States. Here, the parties assume

that the HHS ALJs qualify as "Officers" subject to the Appointments Clause. I accept this assumption for purposes of this opinion.

As explained in *Lucia*, under the Appointment Clause, "[o]nly the President, a court of law, or a head of department" may appoint Officers such as ALJ Thomas. 138 S. Ct. at 2051 (citing U.S. CONST., art. II, § 2, cl. 2). The record reveals that this matter was transferred to ALJ Thomas on June 27, 2017. Nearly six months later, on December 21, 2017, the then Acting-Secretary of the HHS, Eric Hargan ("Acting-Secretary Hargan"), signed a Ratification of Appointments of Administrative Law Judges to preempt any Appointments Clause issue. *See* Dkt. 15. This post-appointment document ratified the appointment of ALJ Thomas (and several other ALJs) and stated that it "reflects the considered judgment of Secretary Hargan with regard to each appointment, *such that the original appointment should be treated as an appointment by the Secretary*." *Id.* at 4 (emphasis added). This ratification document is strong, uncontroverted evidence that prior to December 21, 2017, ALJ Thomas had not been appointed by the President, a court of law, or the Secretary.[4] In other words, ALJ Thomas's June 2017 appointment was unconstitutional under the Appointments Clause.

---

[4] The administrative record does not reveal who actually appointed ALJ Thomas in the first instance. Before the Board, Plaintiffs sought to obtain discovery that would have definitively answered this question. But, because the Board refused to consider the issue, it refused to permit Plaintiffs' requested discovery. Thus, the only information contained in the administrative record that speaks to ALJ Thomas's original appointment is Acting-Secretary Hargan's ratification, which on its face strongly implies that ALJ Thomas's original appointment was deficient.

**B.     WAIVER**

The Secretary argues that Plaintiffs waived their Appointments Clause claim because they failed to raise it before ALJ Thomas. In other words, the Secretary argues that Plaintiffs' Appointment Clause challenge is untimely. Plaintiffs strongly disagree and argue that their challenge was timely under *Lucia*. I agree with Plaintiffs.

Plaintiffs first challenged ALJ Thomas's appointment during their appeal to the Board. This fact is nearly identical to the circumstances in *Lucia*. In *Lucia,* the petitioner did not raise the appointment clause challenge at the hearing in front of the SEC ALJ; indeed, like Plaintiffs here, the petitioner raised the issue during the administrative appeal process. *See* 138 S. Ct. at 2047. Nonetheless, the Supreme Court found that Lucia's challenge was "timely." *Id.* at 2055. Based on my reading of *Lucia*, for this reason alone, Plaintiffs' Appointments Clause challenge was timely.[5]

The Secretary also argues that *Lucia* is distinguishable based on the difference between SEC and HHS regulations. Specifically, the Secretary contends that SEC regulations do not contain any issue exhaustion requirements, but HHS regulations specifically provide that the Board "will not consider . . . any issue in the briefs that could have been raised before the ALJ but was not." 42 C.F.R. § 1005.21(e). Wrapped in this argument is the Secretary's belief that Plaintiffs "could have" raised their Appointments

---

[5] There is some disagreement in the courts about when an Appointments Clause challenge should be considered timely. Courts disagree about whether an Appointments Clause challenge must be raised at the administrative level or can be raised for the first time during an appeal to the federal district courts. *See Velasquez on Behalf of Velasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2–3 (E.D. La. Dec. 17, 2018) (collecting cases). Because here the issue was raised at the administrative level, I need not choose a side.

Clause challenge based on *Lucia* before ALJ Thomas. Given the timeline involved in this case, I strongly disagree.

The evidentiary hearing before ALJ Thomas occurred in March 2018. In his Order Setting Post-Hearing Briefing Schedule, ALJ Thomas specifically allowed the parties to submit one brief by June 18, 2018, and stated that "[r]esponse briefs will not be permitted." Dkt. 16-4 at 194. Importantly, *Lucia* was decided on June 21, 2018—i.e., after the close of evidence and briefing. In other words, the Secretary invites me to find that Plaintiffs should have defied ALJ Thomas's Order by filing a reply brief advancing a totally new argument. I decline the Secretary's invitation. Based on the date of the *Lucia* decision and ALJ Thomas's briefing order, I find that Plaintiffs could not have raised their arguments based on *Lucia* before ALJ Thomas.[6]

In summary, I find that Plaintiffs Appointment Clause arguments, which were presented for the first time during the administrative process before the Board, were timely. Thus, Plaintiffs did not waive their Appointments Clause claim. I now turn to the issue of ratification.

---

[6] The Secretary also seems to argue that Plaintiffs could have raised their Appointments Clause argument based on other cases that pre-date *Lucia*. Unsurprisingly, this is technically true. Judges rarely create new law. The judicial role merely requires judges to apply the law to facts. In *Lucia*, the Supreme Court clarified its Appointments Clause jurisprudence against a factual background that is remarkably similar to the facts involved in this case. Given the factual similarity, and the fact that *Lucia* was the then most recent pronouncement of the Supreme Court, Plaintiffs' reliance on *Lucia* was appropriate. Thus, I find the Secretary's arguments that Plaintiffs should have raised their Appointments Clause challenge based on cases other than *Lucia* unpersuasive.

C.     APPOINTMENTS CLAUSE RATIFICATION

The Secretary contends that even if ALJ Thomas's original appointment was unconstitutional, he was properly appointed after Acting-Secretary Hargan signed the Ratification of Appointments of Administrative Law Judges on December 21, 2017. Plaintiffs disagree, arguing that the appointment of an ALJ cannot be delegated and an invalid, non-delegable appointment cannot be ratified. In my view, the Secretary is correct.

In *Edmond v. United States*, 520 U.S. 651, 653 (1997), the Supreme Court considered whether the appointments of two civilian members of the Coast Guard Court of Criminal Appeals were proper under the Appointments Clause. The Supreme Court explained that both civilian members of the Coast Guard Court of Criminal Appeals "were originally assigned to serve on the court by the General Counsel of the Department of Transportation, who is, ex officio, the Judge Advocate General of the Coast Guard." *Id.* at 653–54. But after the validity of those appointments was called into doubt, the Chief Judge of the Coast Guard Court of Criminal Appeals "sent a memorandum to the Chief Counsel of the Coast Guard requesting that the Secretary [of Transportation], in his capacity as a department head, reappoint the judges so the court would be constitutionally valid beyond any doubt." *Id.* at 654. Thereafter, "the Secretary of Transportation issued a memorandum 'adopting' the General Counsel's assignments to the Coast Guard Court of Military Review 'as judicial appointments of my own.'" *Id.* The Supreme Court ultimately concluded that the Secretary of Transportation's post-appointment ratification

11

was "valid" and done "in conformity with the Appointments Clause of the Constitution." *Id.* at 666.

*Edmond* clearly demonstrates that an agency head's post-appointment ratification can satisfy the Appointments Clause. And, as described above, the language in Acting-Secretary Hargan's ratification tracks the language the Secretary of Transportation used in *Edmond*. *Compare* Dkt. 15 at 4 ("reflects the considered judgment of Secretary Hargan with regard to each appointment, such that the original appointment should be treated as an appointment by the Secretary"), *with Edmond*, 520 U.S. at 654 ("[T]he Secretary of Transportation issued a memorandum 'adopting' the General Counsel's assignments to the Coast Guard Court of Military Review 'as judicial appointments of my own.'"). Accordingly, I find that Acting-Secretary Hargan's ratification was effective and ALJ Thomas's appointment was constitutional as of December 21, 2017.

### D.    RATIFICATION AND *LUCIA*

The only remaining question is whether the ratification of ALJ Thomas's appointment cured the *Lucia* problem. On this point, the parties couldn't be further apart. Plaintiffs take the position that under *Lucia*, they are entitled to a new hearing if the original "adjudication [was] tainted with an appointments violation." 138 S. Ct. at 2055. Plaintiffs contend that even if the ratification was effective on December 21, 2017, ALJ Thomas made several rulings between the time of his deficient appointment in June 2017 and the ratification in December 2017. Based on these pre-ratification rulings, Plaintiffs argue the adjudication was still tainted with an Appointments Clause violation and remand to the HHS is required under *Lucia*. The Secretary views this issue differently.

The Secretary argues that the "adjudication" discussed in *Lucia* is specifically referring to the administrative hearing before the ALJ and the ALJ's subsequent decision. Thus, so long as ALJ Thomas was constitutionally appointed at the time of the hearing and his decision, his pre-ratification rulings are simply immaterial to my determination. I find Plaintiffs' position persuasive.

I have reviewed the record to determine the type of rulings that ALJ Thomas made prior to the December 2017 ratification. As mentioned above, in October 2017 ALJ Thomas issued an order wherein he considered direct testimony, issued rulings on summary judgment, ruled on admissibility of evidence, and ruled on challenges to expert opinions and numerous other material issues in the case. *See* Dkt. 20-3 at 266–73. In my view, these rulings clearly impacted the remaining administrative proceeding. Because ALJ Thomas made the rulings while he was unconstitutionally appointed, the administrative proceeding was clearly tainted with an Appointments Clause violation. Meanwhile, I find no language in *Lucia* that purports to define "adjudication" to mean only the administrative hearing and subsequent decision, as argued by the Secretary.

In sum, because I find that Plaintiffs' adjudication was tainted by ALJ Thomas's pre-ratification rulings, I find that *Lucia* requires this case to be returned to the HHS. *See* 138 S. Ct. at 2055 ("The appropriate remedy for an adjudication tainted with an appointments violation is a new hearing before a properly appointed official," and "[t]o cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled.") (internal quotation marks and citation omitted).

## CONCLUSION

For the reasons explained above, I **RECOMMEND** that Plaintiffs' Motion for Summary Judgment (Dkt. 37) be **GRANTED**, Defendant's Motion for Summary Judgment (Dkt. 38) be **DENIED,** and this case be **REMANDED** to the HHS for reconsideration in accordance with this opinion and applicable law.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 8th day of April, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE